UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| AARON McKNIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-84-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| ERIC HOLDER, et al., | ) | **AND ORDER** |
| | ) | |
| Defendants. | ) | |

\*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*   \*\*\*\*\*

Plaintiff Aaron McKnight, confined in the Federal Correctional Institution in Manchester, Kentucky ("FCI-Manchester"), has filed a *pro se* Complaint asserting civil rights claims under 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971).[1]  [R. 2.]  By separate Order, McKnight has been granted permission to proceed *in forma pauperis*.

The Court now screens the Complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).[2]  For the reasons set forth below, McKnight's claims against two defendants will be dismissed, and his claims against two other defendants will be transferred to the proper federal court in Texas for further disposition.

---

[1] The named defendants are: (1) Eric Holder, United States Attorney General; (2) Warden Maureen Cruz, Federal Correctional Institution-Seagoville ("FCI-Seagoville"), Seagoville, Texas; (3) "Case Manager Rice," FCI-Manchester; and (4) Lieutenant Leap, FCI-Seagoville.

[2] A *pro se* pleading is held to less stringent standards than those drafted by attorneys.  *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). But the Court must dismiss a case at any time if it determines that the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief.  28 U.S.C. § 1915(e)(2)(B).

# I.

McKnight alleges that on October 31, 2009, while confined at FCI-Seagoville located in Seagoville, Texas, he was charged with using a telephone to engage in criminal activity. He further alleges that he was confined in a special housing unit in retaliation for refusing to inform on other inmates, and that "Lieutenant Leap" called his mother, verbally harassed her, and threatened to send her to jail. McKnight states that he was convicted of the telephone charge, a 100-series Bureau of Prisons ("BOP") charge,[3] denied eligibility in the Residential Drug and Alcohol Program ("RDAP")[4] and the possibility of one year's early release. McKnight also states that he lost his phone privileges and was assigned a public safety factor requiring the screening of all of his e-mails. McKnight states he successfully challenged his disciplinary conviction on appeal, and that in January of 2011, the 100-series Incident Report was "dismissed/ordered expunged" from his BOP central file. [R. 2, pp. 3, 7.] He claims, however, that FCI-Manchester officials are currently retaliating against him and want to "get even" with him because of his expunged Incident Report. Specifically, McKnight claims that his Unit Team members refuse to consider him for "extra" half-way house placement.

---

[3] The various levels of BOP offenses are set forth in 28 C. F. R. § 541.13, Table 3. The most serious offenses ("Greatest Category") are listed in Code Nos. 100-199; the next level of offenses ("High Category") are listed in Code Nos. 200- 299; the next level of offenses ("Moderate Category") are listed in Code Nos. 300-399; and the final and lowest level of offenses ("Low Moderate Category") are listed in Code Nos. 400-499.

[4] The RDAP is a program through which certain federal inmates receive various incentives for involvement in drug abuse treatment programs. 28 C.F.R. § 550.57. The BOP has discretion to allow an inmate a sentence reduction of up to one year if the inmate was convicted of a nonviolent offense and has successfully completed a substance abuse treatment program. 18 U.S.C. § 3621(e)(2)(B).

To the extent that McKnight alleges that Lieutenant Leap caused the disciplinary charges to be brought against him at FCI-Seagoville in retaliation for McKnight's refusal to inform on other inmates, he asserts a claim under the First Amendment of the United States Constitution. McKnight further alleges that Lieutenant Leap subjected him to cruel and unusual punishment, presumably by causing him to be confined in a segregated housing unit. Those claims fall under the Eighth Amendment of the Constitution.

McKnight further complains that "the defendants assigned at the Kentucky Institution" have deliberately denied him due process of law by failing to correct his BOP Central file, and he claims that this failure subjects him to substantial hardship. Those claims fall under both the Fifth Amendment, which guarantees due process of law, and the Eighth Amendment, which prohibits cruel and unusual punishment. McKnight seeks compensatory damages of $150,000.00 and punitive damages of $200,000.00. He also seeks an Order directing the BOP to investigate the allegedly unconstitutional conduct at FCI-Seagoville.

## II.

### A.

It is unclear whether "Case Manager Rice" is actually an employee of FCI-Manchester. Based on McKnight's complaint that his "Unit Team managers" refuse to consider him for a half-way house placement, it appears that Rice is probably an FCI-Manchester employee. Assuming that Rice is an FCI-Manchester employee, McKnight's claims against him (or her) must be dismissed without prejudice because it is clear from the attachment to his Complaint that he failed to fully exhaust those claims prior to filing this action.

The Prison Litigation Reform Act, ("PLRA") 42 U.S.C. § 1997e(a), requires state and

federal prisoners to exhaust all available administrative remedies before bringing an action with respect to prison conditions under federal law. The four-tiered administrative remedy scheme available to BOP inmates complaining about any aspect of their confinement is set out in its Administrative Remedy Program found at 28 C.F.R. §§ 542.10-542.19.[5]

The attachment to McKnight's Complaint reveals that he began the administrative remedy process only on January 19, 2011, by submitting a BP-9 "Request for Administrative Remedy" to Karen Hogsten, Warden of FCI-Manchester. [R. 2-1, pp. 1-2.] McKnight attaches no documents showing that he completed the next two steps of the BOP's exhaustion process. As McKnight did not even *begin* the three-step administrative remedy process until January 19, 2011, he could not have completed the ninety-day exhaustion process prior to filing this *Bivens* action on March 7, 2011. In other words, he short-circuited the BOP's exhaustion process by filing this lawsuit.

The Supreme Court of the United States has twice held that the statute means precisely what it says. *See Booth v. Churner*, 532 U.S. 731, 741 (2001); *Porter v. Nussle*, 534 U.S. 516,

---

[5]
Section 542.13(a) demands that an inmate first informally present his complaint to the staff by filing a BP-8, thereby providing them with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may initiate the formal remedy process by filing a written request (a BP-229 form, formerly a BP-9) to the Warden. If the inmate is not satisfied with the Warden's response, then he has twenty days from the date of the Warden's response in which to appeal (BP-230, formerly BP-10) to the Regional Director for the geographical region in which the inmate's place of confinement is located; for federal prisoners in the Eastern District to Kentucky, the appeal goes to the Mid Atlantic Regional Office of the BOP in Annapolis Junction, Maryland. If the prisoner is not satisfied with the Regional Director's response, he may appeal within thirty days to the Office of General Counsel of the BOP (BP-231, formerly BP-11). *See* § 542.15 (a)-(b). The BOP administrative remedy process takes approximately ninety (90) days to complete from the time the prisoner submits his BP-9 request, absent extensions.

525 (2002). Additionally, in *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that exhaustion of administrative remedies must be done "properly," which means going through all steps that the agency offers, obeying all directions, and adhering to all deadlines set by the administrative rules. *Id*. at 90.

When the affirmative defense of failure to exhaust appears on the face of a complaint, a district court can dismiss the complaint *sua sponte* on the ground that it fails to state a claim. *Jones v. Bock*, 549 U.S. 199, 214-15 (2007); 28 U.S.C. § 1915A(b)(1)); *Carbe v. Lappin*, 492 F.3d 325, 328 (5th Cir. 2007) (holding that a case under the PLRA can be dismissed *sua sponte* for failure to state a claim, predicated on failure to exhaust, if the complaint itself makes clear that the prisoner failed to exhaust his administrative remedies). This Court, and other district courts in this circuit, have held that in light of *Jones*, *sua sponte* dismissal of a complaint is warranted where failure to exhaust is apparent from the face of the complaint. *Walker v. Baker*, No. 6:10-CV- 68-ART (E.D. Ky.) [R. 9 & 10, June 24, 2010]; *Smith v. Lief*, 2010 WL 411134, at *4 (E.D. Ky. Jan. 27, 2010); *Gunn v. Kentucky Depart. Of Corrections*, 2008 WL 2002259, at *4 (W.D. Ky. May 7, 2008); *Deruyscher v. Michigan Dept. of Corrections Health*, 2007 WL 1452929, at *3 (E.D. Mich. May 17, 2007).

As it is obvious from the attachment to McKnight's Complaint that he could not have completed the entire BOP exhaustion process when he filed this action on March 7, 2011, his claims against Case Manager Rice will be dismissed without prejudice to him filing another action after completing the BOP administrative remedy process.[6]

---

[6]
If McKnight files a new action after exhausting his claims, and if that Complaint is based on the same facts he asserted in this action, he will be eligible for a waiver of the $350.00 filing fee

5

**B.**

McKnight has named Eric Holder, Attorney General of the United States, as a defendant, but he does not allege that Holder was directly involved in any of the actions allegedly taken against him, either at FCI-Seagoville or FCI-Manchester. *Bivens* requires a showing that the named defendant's actions resulted in the deprivation of a constitutional right. *Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976). A supervisory government employee is only liable for his or her own misconduct. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948-49 (2009). Under the facts alleged, McKnight appears to be claiming that Holder is liable to him under the doctrine of *respondeat superior*, through which a superior can be held liable for the actions of an employee.

However, *respondeat superior* cannot form the basis of liability in a *Bivens* action. *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 691 (1978); *Kesterson v. Luttrell*, 172 F.3d 48 (Table), 1998 WL 894843 (6th Cir.1998); *Jones v. City of Memphis*, 586 F.2d 622, 625 (6th Cir. 1978). Instead, a plaintiff must show that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. *Rose v. Caruso*, 284 F. App'x. 279, 282-83 (6th Cir. 2008); *Gregory v. Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Searcy v. City of Dayton*, 38 F.3d 282, 287 (6th Cir. 1994). Because McKnight does not allege that Holder was directly or personally involved in any of complained-of actions and decisions at either prison, or that he encouraged the specific alleged misconduct at either prison, the claims against him will be dismissed with prejudice for failure to state a claim upon which relief may be granted.

---

pursuant to *Owens v. Keeling*, 461 F.3d 763, 776-77 (6th Cir. 2006) (holding that a prisoner should not have to pay a second filing fee for refiling his complaint after it was initially dismissed without prejudice for failure to exhaust).

## C.

McKnight's *Bivens* claims against both Warden Cruz and Lieutenant Leap will be transferred to a federal court in Texas for all further disposition.

Proper venue in civil rights claims is governed by the general venue statute, 28 U.S.C. § 1391. Section 1391(e) provides a special venue provision for any action in which at least one of the defendants is an officer or employee of the United States or its agencies acting in his or her official capacity or under color of legal authority. *See* 28 U.S.C. § 1391(e). Although the Court has assumed that "Case Manager Rice" is a federal official employed at FCI-Manchester, and although that fact alone would have originally rendered venue in this Court proper under § 1391(e), the claims against Rice have been dismissed, as have the claims against Holder. Thus, the only remaining defendants are "Warden Cruz" and Lieutenant Leap.

According to McKnight's own statements, Leap was employed at FCI-Seagoville on October 31, 2009, the date on which he claims Leap violated his constitutional rights. Further, the Court takes judicial notice that Maureen Cruz was the Warden of FCI-Seagoville in 2009 and 2010. *See Sanchez v. Cruz*, 2010 WL 370178 (N.D. Tex. June 21, 2010) (identifying Cruz as the Warden of FCI-Seagoville); *Kraft v. Cruz*, 2010 WL 882992 , at *1, n. 2 (N.D. Tex. Mar. 9, 2010) (same); *Gross v. Cruz*, 2009 WL 1675075 , at *1, n. 2 (N.D. Tex. June 15, 2009) (same).[7] FCI-Seagoville is located in Seagoville, Texas, which is located in the judicial district of the the United states District Court for the Northern District of Texas ("the Northern District of Texas"). Accordingly, these two defendants most likely reside in the Northern District of

---

[7] Cruz may still be the Warden of that prison.

Texas.

Even where venue is proper, 28 U.S.C. § 1404(a) permits a district court to transfer a case to another district where it might have been brought when doing so would serve the convenience of the parties or the interests of justice. The Sixth Circuit has emphasized that "[a]s the permissive language of the transfer statute suggests, district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' makes a transfer appropriate." *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir.), *reh'g denied*, 583 F.3d 955 (6th Cir. 2009). A district court should consider the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public-interest concerns, "such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Business Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 30 (1988)). The Court will therefore examine whether the convenience of the parties and the interests of justice justify transferring this action to the United States District Court for the Northern District of Texas.

McKnight does not allege that either Cruz or Leap reside in this district or that they have any other connection to this district. All of the alleged events giving rise to McKnight's claims against Warden Cruz and Lieutenant Leap transpired at FCI-Seagoville, which is located in the Northern District of Texas. Potential witnesses presumably reside or could be located in that district, and relevant documents, if any, are presumably located in the Northern District of Texas. To the extent that McKnight asserts claims against Cruz and Leap in their individual capacities, allowing this action to proceed here based solely upon the venue considerations set forth in 28 U.S.C. § 1391(e) becomes even less attractive. If this action remains in this district, Cruz and

8

Leap would most likely argue with good reason that any individual capacity claims against them should be dismissed for lack of *in personam* jurisdiction.

A defendant must have purposefully established minimum contacts with the forum State before personal jurisdiction will be found to be reasonable and fair. *International Shoe Co. v. Washington*, 326 U.S. 310, 316-19 (1945). In order to establish minimum contacts, a plaintiff must show that the defendant should reasonably anticipate being hauled into court in the forum State, because he purposefully availed himself of the privilege of conducting activities there. *Id.*; *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 380 (6th Cir. 1968). Put another way, "the relevant inquiry is whether the facts of the case demonstrate that the non-resident defendant possesses such minimum contacts with the forum state that the exercise of jurisdiction would comport with 'traditional notions of fair play and substantial justice.'" *Theunissen v. Matthews*, 935 F.2d 1454, 1459-50 (6th Cir. 1991) (citations omitted).

There is no evidence that either of these presumably Texas-domiciled defendants have such minimum contacts with the Commonwealth of Kentucky that exercising personal jurisdiction over them would be constitutionally permissible. Neither defendant could have foreseen or anticipated being hauled into court in Kentucky. Presumably, the only reason McKnight filed this action in this district is the fact he is now incarcerated here. Finally, to the extent that McKnight asserts individual capacity claims against Cruz and Leap about events alleged to have occurred in the Northern District of Texas, a federal court in Texas is in a better position to determine which Texas statute of limitations may apply. *See Abdur-Rahim v. Doe*, 2009 WL 678348, at *3, (E.D. Ky. Mar. 11, 2009) (transferring venue of prisoner's civil rights claims, which accrued in New Jersey, to the federal court in that state under 28 U.S.C. § 1404(a),

for the convenience of the parties and the interests of justice).

In summary, the alleged acts and omissions of Cruz and Leap did not occur in this district and neither of them, in their individual capacities, appear to have any nexus with the Eastern District of Kentucky. Accordingly, the interests of justice strongly warrant transferring the remaining claims against them to the Northern District of Texas pursuant to 28 U.S.C. § 1404(a), as this Court and others have done under similar circumstances. *See*, *e.g.*, *Jeburk v. Brown*, No. 7:10-CV-58-ART (E.D. Ky) (R. 4, June 1, 2010) (transferring a prisoner's federal civil rights action alleging malicious prosecution to the judicial district where he was prosecuted by federal officials); *Zakiya v. United States*, 267 F. Supp. 2d 47 (D.D.C. 2003) (transferring federal prisoner's civil rights claims to the district where his warden was subject to personal jurisdiction).

Finally, a court may order a *sua sponte* transfer under § 1404(a) even though the case was filed in the proper venue at the outset. *See Flynn v. Greg Anthony Constr. Co.*, 95 F. App'x 726, 738 (6th Cir. 2003); *Carver v. Knox County, Tenn.*, 887 F.2d 1287, 1291 (6th Cir. 1989). Therefore, the Court will *sua sponte* transfer the remaining claims against Cruz and Leap to the Northern District of Texas, Dallas Division, for all further disposition.

### III.

Accordingly, for the reasons stated above, **IT IS ORDERED** as follows:

(1) Plaintiff Aaron McKnight's constitutional claims against Defendant Eric Holder are **DISMISSED WITH PREJUDICE**;

(2) McKnight's constitutional claims against Case Manager Rice, FCI- Manchester, are **DISMISSED WITHOUT PREJUDICE** for failure to exhaust;

(3) McKnight's constitutional claims against Defendants Warden Maureen Cruz and Lieutenant Leap of FCI-Seagoville are **TRANSFERRED** to the United States District Court for the Northern District of Texas, Dallas Division, for all further proceedings;

(4) This action is **DISMISSED** from the docket of the Court; and

(5) Judgment shall be entered contemporaneously with this Memorandum Opinion and Order in favor of Defendants Eric Holder and Case Manager Rice.

This the 25th day of March, 2011.

Signed By:
*Gregory F. Van Tatenhove*
United States District Judge